IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TRACEY HARDIN,

        Plaintiff,                         CASE NO. 1:09cv203-SPM/AK

vs.

WASTE MANAGEMENT INC OF FLORIDA,

        Defendant.

_____/

# ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment (doc. 14), Plaintiff's Response in Opposition (doc. 17) and related documents (docs. 18, 19), and the Defendant's Reply to the Plaintiff's Response (doc. 25). For the reasons expressed herein, the Motion for Summary Judgment will be granted as to Counts One, Two, and Three, and the Court will decline to exercise supplemental jurisdiction over the remaining state law unpaid wages claim.

**I.    BACKGROUND**

Plaintiff's Complaint (doc. 1) alleges four counts: sexual harassment in violation of Title VII of the Civil Rights Act; retaliation in violation of Title VII of the Civil Rights Act; retaliation in violation of Florida's Private Whistleblower's Act, Fla. Stat. § 448.101 *et seq*; and unpaid wages in violation of Florida Statutes

Chapter 448.

Plaintiff began working for Defendant Waste Management on April 21, 2008, and was fired on July 23, 2008. As "territory sales manager" her duties were to sell the Defendant's services to customers and potential customers.

Clarence "Tal" Johnson was the Plaintiff's co-worker, who Plaintiff alleges sexually harassed her. Johnson, an African-American, often offered her dark chocolate, allegedly in a suggestive manner and provocative voice. He also stated, "You know it's your favorite."

On May 6, 2008, while traveling in the car with Johnson to have his air condition repaired, Johnson allegedly danced, sang, and rolled his tongue in a suggestive manner, and suggested that Plaintiff remove her stockings when she stated that she was hot. He asked her about her "woman's secrets" and became angry when she did not offer the sort of secret he was looking for. He then drove to one or more office parks and quizzed the Plaintiff on the type of garbage receptacles there and asked her to touch some of them, which bothered her. During lunch, he asked her personal questions about her family, which made her uncomfortable, and made a remark to the air conditioner repairman about bringing a pretty woman along with him.

During another incident, Plaintiff alleges that Johnson yelled at her and made aggressive gestures with his hands during an argument.

Plaintiff also alleges that she was once in Johnson's office along with another male co-worker, who was discussing a fight with Johnson. The men

began using unprofessional and profane language, including the words "fuck" and "bitch."

Additionally, Plaintiff alleges in her complaint that Johnson told her that she was attractive, asked if she was interested in black men, and stated that he was interested in white women, and passed her notes during a meeting stating that he wanted to tempt her.

On July 2, 2008, Plaintiff reported the alleged sexual harassment to her employer. She did not report the harassment immediately because she was "scared for [her] job." On July 3, 2008, she also sent an e-mail describing her complaint, which Waste Management senior human resource manager Denise Bass investigated. Upon her review, Bass concluded that Johnson's actions were misinterpreted as sexual harassment. For instance, Johnson offered chocolate to others, and claimed that he suggested Plaintiff remove her stockings because she said that she was so hot in them. As an accommodation, Bass arranged to keep Plaintiff and Johnson apart at work. They were assigned separate morning meetings, but still shared the same office trailer for work.

For the first ninety days of her employment with the Defendant, Plaintiff was a probationary sales employee. In June 2008, Plaintiff's supervisors met to discuss her job performance, acknowledged that her sales activity was low, and decided to require her to provide daily activity updates and attend sales meetings each morning. According to supervisor Bob Shires, Plaintiff routinely missed the morning meetings and failed to provide the daily updates, and customers

complained about her service. However, Plaintiff was not given a written reprimand, and complains that she was required to attend additional meetings in retaliation for reporting the alleged sexual harassment.

Defendant employs a computer program called Record Setter to track employee activity and sales calls. Sales employees are supposed to make 10 sales calls per day. According to records, Plaintiff made only 97 calls during her probationary period, and made only one reported sale.

Plaintiff also received and signed a copy of the Defendant's North Florida Area Attendance and Punctuality Policy, which assigns "occurrence points" for attendance infractions. An employee who accumulates four or more points is subject to termination. Plaintiff was absent from work for eleven of the twelve work days between July 7 and July 22, 2008, and accumulated 5.5 occurrence points in July. Plaintiff disputes some of the absences, as she was working from home. However, Plaintiff did not have supervisor approval to work from home, which was required.

After the conclusion of her probationary period and in consideration of her occurrence points and attendance record, Bass and Domenica Farmer, the area sales manager, decided to terminate Plaintiff. On July 23, 2008, Plaintiff was told that she was being terminated for excessive absences and was informed of client complaints.

During the probationary period, Plaintiff was entitled to receive "ramp-up" pay, as it is expected to take new sales employees some time to build up

sufficient commission income. Defendant was obligated to pay $3,000 for the first month, $2,800 for the second month, and $2,600 for the third month. However, Defendant only paid Plaintiff $1,929 for the final month, because she did not work the entire month of July.

## II.	STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party "by clear and convincing evidence". Id. at 254.

Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). A common way for the moving party to meet its burden is by demonstrating that the non-moving party cannot show an essential element of his case. Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996). In determining whether the burden has been met, the court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and

resolve all reasonable doubts about the facts in favor of the non-movant." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) (citations omitted).

If the moving party has satisfied its burden, the burden shifts to the nonmoving party who must show "that summary judgment would be inappropriate because there exists a material issue of fact." Mullins, 228 F.3d at 1313. A "party opposing a properly-supported motion for summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.'" Brannon v. Thomas County Jail, 280 Fed.Appx. 930, 2 (11th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). "There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable fact-finder could return a verdict in its favor." Id. (quoting Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001)). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 483 F.3d 1265, 1273 (11th Cir. 2007) (internal quotations omitted).

## III. McDONNELL DOUGLAS FRAMEWORK

Under the McDonnell Douglas framework, Plaintiff, relying on circumstantial evidence, must first make a prima facie case of a violation of Title VII . Catanzaro v. Lyons, 232 Fed. Appx. 878, 880 (11th Cir. 2007) (citing

McDonnell Douglas, 411 U.S. 792, 802 (1973); and Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997)).

To establish a claim for sexual harassment under Title VII, Plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (internal quotations omitted)). "Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). "If an employer has actual or constructive notice of harassment but takes immediate and appropriate corrective action, the employer is not liable for the harassment." Watson v. Blue Circle, Inc., 324 F.3d 1252, 1261 (11th Cir. 2003).

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v.

Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Plaintiff must demonstrate that she had a "good faith, reasonable belief" that the Defendant was engaged in unlawful conduct and "need not prove the underlying discriminatory conduct that [s]he opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment[.]" Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997). Additionally, Count Three of the Complaint alleges retaliation for reporting the alleged sexual harassment, pursuant to Florida's Private Whistleblower's Act, to which the McDonnell Douglas burden shifting analysis applies.

If Plaintiff meets her burden of establishing a prima facie case, then a legal presumption of discrimination or retaliation arises and the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged actions. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). Upon the proffer by Defendant of a legitimate, non-discriminatory reason, the legal presumption of discrimination or retaliation disappears and the burden shifts back to Plaintiff. Id. Plaintiff must then present evidence sufficient to show that there are genuine issues of material fact as to the truth or falsity of Defendant's proffered legitimate, non-discriminatory reasons and whether Defendant unlawfully discriminated or retaliated against her. Id. at 1025 n.11.

IV. ANALYSIS

    A.    **Sexual Harassment**

Plaintiff has failed to make a prima facie case for hostile work

environment sexual harassment under Title VII. First, the Plaintiff's strongest allegations of harassment by Johnson, that he asked if she would be interested in a black man and wrote notes stating that he wanted to tempt her, are merely cited from the Plaintiff's complaint. Plaintiff cannot overcome the Defendant's Motion for Summary Judgment by reciting the allegations from her pleadings.

      Moreover, even giving consideration to the allegations raised in the complaint, along with all other allegations of harassment raised by the Plaintiff, it is clear that the Plaintiff cannot establish a prima facie showing of sexual harassment because the events described were neither severe nor pervasive enough to constitute sexual harassment under Title VII. As to much of the behavior cited by the Plaintiff, as was recognized by the Defendant's investigation of the events, there is no objectively reasonable basis for concluding that the actions were sexual or harassing in nature. For instance, the offering of dark chocolates is not per se objectionable, even though Johnson is African-American and even if he touched Plaintiff's hand while giving them to her. Likewise, dancing and singing in the car is not per se objectionable, and neither is asking questions about a co-worker's family. Plaintiff states that Johnson was performing these actions "provocatively" and "suggestively" without providing any objectively reasonable basis for these descriptions. Plaintiff has also made no showing that Johnson's "aggressive gestures" with his hands during a disagreement about a client meeting was sexual in nature, or based on her womanhood.

Additionally, even those actions which may be construed as sexual are not severe or pervasive. All of the incidents took place over an approximately two month period from the time Plaintiff began working for the Defendant, until she reported Johnson's actions. Most of Johnson's statements are ambiguous, obscure, or minor. For instance, Johnson asked Plaintiff about "woman's secrets," described Plaintiff as a "pretty woman" to a mechanic, suggested that Plaintiff remove her stockings when she complained of being hot. Plaintiff also states that she witnessed Johnson and a fellow employee talking about "nasty stuff" with "uncomfortable sexual connotations" in his office, without further description. Mere use of the terms "fuck" and "bitch," which are used in various sorts of conversations, sexual and otherwise, on a single occasion, when not directed at Plaintiff, and without more sexual or derogatory context, is insufficient to amount to a sexual harassment claim.

Lastly, Plaintiff's sexual harassment claim cannot survive summary judgment because the Defendant took appropriate and reasonable action from the time it became aware of the Plaintiff's allegations. Plaintiff reported her allegations orally on July 2, 2008, and via e-mail on July 3, 2008. Prior to this time, the Defendant had no actual knowledge of Plaintiff's concerns, and lacked constructive knowledge of Johnson's actions, which did not rise to the requisite level of severity. A senior human resource manager investigated the complaint, concluded that Johnson lacked an intent to harass and that his behavior did not warrant his termination, and offered Plaintiff the accommodation that she

continue her duties apart from Johnson. Plaintiff and Johnson were given separate meeting times, although they continued to work in the same trailer office. The Defendant took immediate and appropriate action to keep the Plaintiff separated from Johnson, short of firing him, which was reasonably determined to be unwarranted by the circumstances.

    **B.    Retaliation**

In the present case, the Plaintiff has established a prima facie case of retaliation under Counts Two and Three, given the close temporal proximity between the time that she reported Johnson's conduct and her firing. See <u>Hill v. Emory University</u>, 346 Fed.Appx. 390, 394 (11th Cir. 2009) ("[a] causal connection can be established by the close temporal proximity between the protected activity and the adverse action.")

However, summary judgment should still be granted in favor of the Defendant on these counts because the Plaintiff has presented no evidence to discount the Defendant's legitimate, non-discriminatory reasons for her termination. Plaintiff was fired because of poor job performance, and excessive absences. While employed as a probationary sales person for the Defendant, the Record Setter program reveals that Plaintiff made only one sale. Moreover, at the time of her termination, Plaintiff had accrued in excess of the requisite number of "occurrence points" to warrant her firing pursuant to the Defendant's Attendance and Punctuality Policy, of which she had previously been made aware. During her final weeks of employment, Plaintiff was not present for work

for eleven work days. Although Plaintiff claims to have been working from home, the Defendant possessed a legitimate basis for the termination of an employee whose successive absences from the workplace were not approved or necessary.

In order to overcome the Defendant's legitimate, nondiscriminatory reason for her termination, Plaintiff must show that a reasonable jury could find that the reason is pretext for discrimination. In this regard, Plaintiff relies on the Defendant's alleged mishandling of her harassment complaint. However, as expressed above, the Defendant's agent investigated her complaint once it had notice of concerns, reasonably concluded that it was without merit, yet offered to accommodate the Plaintiff by keeping her separate, insofar as practicable, from Johnson. There is no evidence to suggest that the Plaintiff's poor performance as a probationary employee and excessive absences were mere pretext for a discriminatory termination.

### C. Unpaid Wages

Summary judgment is inappropriate as to Count Four, as there remains a material question of fact as to whether the Plaintiff was properly compensated upon her termination. However, as Count Four is premised solely on Florida state law, and as summary judgment will be granted as to all other counts, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. See 28 U.S.C. § 1367(c); Busse v. Lee County, 317 Fed.Appx. 968, 974 (11th Cir. 2009) ("we expressly encourage district courts to [decline supplemental

jurisdiction over remaining state law claims] when all federal claims have been dismissed pretrial.").

Based on the foregoing, it is hereby ORDERED AND ADJUDGED as follows:

1. Defendant's Motion for Summary Judgment (doc. 14) is **granted** as to Counts One, Two, and Three.

2. Count Four is **dismissed without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

DONE AND ORDERED this <u>twentieth</u> day of July, 2010.

<u>*s/ Stephan P. Mickle*</u>
Stephan P. Mickle
Chief United States District Judge